UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────
UNITED STATES OF AMERICA,

              -against-

LAMONTE JOHNSON,

                      Defendant.
───────────────────────────────

FINDINGS OF FACT
MEMORANDUM
19-CR-221 (NGG) (RML)

NICHOLAS G. GARAUFIS, United States District Judge.

On May 24, 2022, in a jury trial conducted during the COVID-19 pandemic before Judge Raymond J. Dearie, Defendant Lamonte Johnson was convicted of conspiracy to commit Hobbs Act robbery, committing and threatening to commit physical violence in furtherance of a Hobbs Act robbery, and possessing and brandishing firearms during a crime of violence. (Judgment (Dkt. 392) at 1.)[1] Judge Dearie conducted the trial using the three-courtroom system, whereby "testimony was heard in one courtroom, the jury used a separate courtroom for its deliberations, and a third room was used for members of the public to observe a live feed of the trial." *See United States v. Johnson*, No. 23-CR-6258 (NGG), 2024 WL 5183333, at *1 (2d Cir. Dec. 20, 2024) (summary order).[2] Neither party objected to this plan before or during trial. *See id.* Defendant appealed his conviction, and the Second Circuit issued a summary order affirming the judgment in part and remanding the case to this court for fact-finding regarding Defendant's ineffective assistance of counsel claim. *See id.* at *4. The parties submitted several briefs and letters on the scope of fact-finding ordered by the Second Circuit. (*See* Def.'s Mot. for Evidentiary Hr'g (Dkt. 453); Gov't Opp'n (Dkt. 466);

───

[1] This case was reassigned to the undersigned on March 2, 2023.

[2] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

1

Def.'s Reply (Dkt. 476); Def.'s Ltr. Dated Sept. 2, 2025 (Dkt. 490); Gov't Ltr. Dated Sept. 4, 2025 (Dkt. 491); Def.'s Ltr. Dated Sept. 5, 2025 (Dkt. 492).) On September 8, 2025, this court also held an evidentiary hearing to assess "Defendant's trial counsel's reason(s) for not objecting to the court's use of the three-courtroom system before or during Defendant's trial." (*See* Jun. 13, 2025 Order (Dkt. 483) at 4; Sept 8. 2025 Evidentiary Hr'g Tr. ("Sept. 8 Hr'g Tr.") (Dkt. 498).) Following the evidentiary hearing, the parties submitted their proposed findings of fact. (*See* Def.'s Proposed Findings of Fact (Dkt. 496); Gov't Proposed Findings of Fact (Dkt. 497).)

## I. BACKGROUND

The court presumes the parties' familiarity with the underlying facts and procedural history of this case. *See generally Johnson*, 2024 WL 5183333. On November 12, 2020, a federal grand jury charged Defendant with conspiracy to commit Hobbs Act robbery (Count One), committing and threatening to commit physical violence in furtherance of a plan to commit robbery (Count Two), and possessing and brandishing firearms during a crime of violence (Count Three). (*See* Superseding Indictment (S-3) (Dkt. 63) at 1-3.) On May 24, 2022, a jury convicted Defendant of all three counts. (Judgment at 1.)[3] Defendant appealed his conviction. (Not. of Appeal (Dkt. 406).)

On December 20, 2024, the Second Circuit issued a summary order that assumed, without deciding, that the trial court's "physical exclusion of the public from the courtroom and use of a separate viewing room for the public amounted to a closure." *Johnson*, 2024 WL 5183333, at *2 n.4. Under *Waller v. Georgia*, before closing criminal proceedings to the public, "the trial court must consider reasonable alternatives to closing the proceeding,

---

[3] Upon the Government's motion at Defendant's sentencing, the court dismissed the firearm conviction. (Min. Entry Dated Jan. 17, 2023.)

and it must make findings adequate to support the closure." 467 U.S. 39, 48 (1984); *see also Presley v. Georgia*, 558 U.S. 209, 213 (2010) (holding that trial court must make *Waller* findings "before excluding the public from any stage of a criminal trial"); *accord United States v. Gupta*, 699 F.3d 682, 687 (2d Cir. 2012). In the case at bar, the Second Circuit held that the trial court erred when it failed to make *Waller* findings on the record prior to closing the courtroom. *Johnson*, 2024 WL 5183333, at *3. However, in light of the evidentiary hearing on the courtroom closure held on June 2, 2022, the Second Circuit determined that Defendant failed to sufficiently "demonstrate how the fairness, integrity, or public reputation of [the] judicial proceeding[] was called into question." *Johnson*, 2024 WL 5183333, at *3.

The Second Circuit then turned to Defendant's ineffective assistance of counsel claim, noting that because the claim had not been raised below, the factual record on the issue was underdeveloped:

> [T]he District Court's failure to make adequate findings prior to the closure amounted to structural error, *see [Arizona v.] Fulminante*, 499 U.S. [279,] 310, and such an error might well support reversal if Johnson had objected and preserved his objection. It is only the failure of Johnson's counsel to object that places the additional hurdle of plain error review in Johnson's path. But we cannot be sure whether counsel's decision to make only the very limited post-trial objection was strategic, nor can we know whether there would have been any basis for an ineffective assistance claim if counsel had objected to the closure before trial.

*Id.* at *4.

The Second Circuit applied the plain error standard of review and affirmed Judge Dearie's determination that the Government witness's perjury was not material and rejected Defendant's

remaining arguments on appeal. *Id.* at *3, *5. However, the Second Circuit remanded the case back to this court to "conduct the fact-finding necessary to assess Johnson's ineffective assistance of counsel claim." *Id.* at *4.

## II. FINDINGS OF FACT

### A. COVID-19

On November 24, 2020, in response to the COVID-19 pandemic infecting individuals across the Eastern District of New York, Chief Judge Margo K. Brodie issued E.D.N.Y. Administrative Order No. 2020-26 ("Order No. 2020-26"), which prioritized the usage of remote proceedings for all civil and most criminal matters, suspended in-person jury selection and trials, and limited courtroom capacity for any in-person criminal proceedings to 25 individuals, subject to proper social distancing. *See* Order No. 2020-26. Chief Judge Brodie extended Order No. 2020-26 monthly for almost two years, amending procedures as necessary to accommodate the latest data and evolving guidance. *See e.g.,* E.D.N.Y. Administrative Order Nos. 2020-26-1, 2020-26-2, 2022-19. In-person trials resumed March 20, 2021, subject to a 25-person limit of people in the courtroom (including the presiding judge, court staff, and case participants), mask-wearing, social distancing, and "other safety measures implemented for trial by the court." *See* E.D.N.Y. Administrative Order No. 2021-4-1 ("Order No. 2021-4-1") at 1. On April 29, 2022, Chief Judge Brodie issued the seventeenth order extending Order No. 2020-26, as modified by Order 2021-4-1. *See* E.D.N.Y. Administrative Order No. 2022-07 ("Order No. 2022-07"). Order No. 2022-07 was in effect for the entirety of Defendant's trial.

### B. Pre-Trial

On December 8, 2021, the court scheduled jury selection for Defendant's trial to start on May 11, 2022. (Min. Entry Dated Dec.

4

8, 2021.) On April 8, 2022, upon Defendant's request, Defendant's court-appointed counsel Calvin Scholar moved to substitute counsel for Defendant because "the attorney-client relationship ha[d] broken down." (Def.'s Mot. to Substitute Attorney (Dkt. 238) at 1.) On April 13, 2022, the court appointed Kenneth J. Montgomery and N. Keith White as counsel for Defendant pursuant to the Criminal Justice Act ("CJA"). (*See* Appointment of and Authority to Pay Court-Appointed Counsel (Dkts. 242, 243).) Montgomery is an experienced criminal defense attorney with ample experience defending clients in federal courts. (*See* Sept. 8 Hr'g Tr. 22:5-7 (Montgomery testifying that has tried between 20 to 25 federal cases).) Montgomery was "essentially lead counsel in the case." (*Id.* 10:25-11:2.) At the time of Defendant's trial, White had not tried many *federal* criminal cases, but he was formerly a prosecutor in the Brooklyn District Attorney's Office and was enrolled as a mentee in the Eastern District of New York's program for attorneys seeking appointment to the CJA Attorney Panel. (*See id.* 9:10-24, 69:15-16 (White testifying that Montgomery, "who is a mentor in the CJA program, asked [White] if [he] could be co-counsel on this case").)

On May 5, 2022, Judge Dearie held a final pretrial conference to finalize logistics for the upcoming trial. (*See* Min. Entry Dated May 5, 2022.) During the conference, Judge Dearie announced the following directive:

> THE COURT: Okay. Now, we have a problem with COVID again. And as much as I was in favor of arranging the jury box and chairs in front of the jury box so that we could accommodate all our jurors, and I think we will probably go with two or four alternates, given the rising numbers, I am going to resort to the prior system, three-courtroom system, as much as I would rather not. So we will have the jury in the well of the courtroom. We will have the -- a jury room.
>
> Catherine, do we have access next door?

> THE CLERK: Yes.
>
> THE COURT: We have the jury room next door and we will have a viewing room for the public as well. I would rather not do it, frankly, but given what has been reported not only in the popular press but by the Court's own epidemiologist, that, to me, is the prudent choice. So, that is how we are going to handle it.

(May 5, 2025 Pretrial Conf. Tr., DX-H 11:25-12:15.)[4] Prior to issuing this directive, Judge Dearie did not seek input from the parties regarding use of the three-courtroom system. (*See id.*) Neither Montgomery nor White objected to Judge Dearie's decision to use the three-courtroom system for Defendant's trial at the pretrial conference. (*Id.*) When Judge Dearie made this decision, both Montgomery and White were aware of Defendant's Sixth Amendment right to a public trial and their right to object to Judge Dearie's decision to use the three-courtroom system. (Sept. 8 Hr'g Tr. 26:4-13 (Montgomery), 72:4-13 (White).)[5]

Montgomery believed that Judge Dearie's decision was a reasonable response to "a historic pandemic where people were dying." (*See id.* 11:23-24, 24:6-25:12 (testifying that he took the recent scientific data showing a "spik[e]" in COVID-19 cases seriously and believed that Judge Dearie was doing the same).)[6] Montgomery had recently tried "a very serious case" before Judge Dearie under COVID-19 protocols "that went smoothly" and resulted in an acquittal, so Montgomery did not take issue with

---

[4] "DX" refers to Defendant's exhibits admitted into evidence during the September 8, 2025 evidentiary hearing.

[5] Montgomery and White also submitted written declarations prior to the September 8, 2025 evidentiary hearing that were entered into evidence during the hearing. (*See* Montgomery Decl., DX-C; White Decl., DX-B.)

[6] Montgomery's elderly mother who "died from COVID a couple years later" was living in his household during this period. (Sept. 8 Hr'g Tr. 13:7-11.)

6

Judge Dearie's decision. (*See id.* 12:7-10, 13:1-6 (discussing previous trial before Judge Dearie where he "did an opening behind a partition," and noting that Judge Dearie was "very amenable" to the parties for that trial).) Montgomery's decision not to object had nothing to do with his trial strategy and he did not decide not to object because it would somehow help Defendant's case "legally or tactically." (*Id.* 13:15-21.) Montgomery made a "conscious decision" not to object because he "didn't see it as any strategic preservation or objection that would help [Defendant]." (*Id.* 26:15-27:11 ("I didn't not object because I didn't want to piss the judge off. I thought the judge made a very intelligent decision concerning the trial going on.").) Montgomery "didn't think [use of the three-courtroom system] would put the defense to any disadvantage the way [Judge Dearie] had orchestrated it, or his ideas of it." (*Id.* 13:7-9.)

White also thought Judge Dearie's decision was a reasonable response to the recent rise in COVID-19 cases. (*See id.* 93:9:14, 71:11-14 ("The recent spike in COVID-19 infections were disrupting courtroom procedures with regard to trials because jurors would get sick, judges would get sick, and so trials were being disrupted.").) White understood Judge Dearie's decision as a way to mitigate transmission of COVID-19 by spreading the jurors across the "galley[7] where spectators typically would watch a case," necessitating an alternative space for the public to view the trial. (*Id.* 71:15-25.) White decided not to object to Judge Dearie's decision because he was "weighing the public health concern that was still looming very large against the requirements . . . for a public trial." (*Id.* 72:16-21.) By "creating social distancing between jurors," White testified that this approach limited the risk that the court would need to dismiss jurors because of illness, which could have resulted in a mistrial. (*Id.*

---

[7] The court assumes that White was referring to the gallery area of the courtroom.

72:20-25.) White identified two "downside[s]" of a potential mistrial: (1) Defendant had been incarcerated in a different case and his time was expiring such that if he were to be acquitted at trial in the instant case, "he would be coming home"; and (2) White wanted to avoid "forecasting [their] defense" strategy to the Government. (*Id.* 73:4-24.)

After the court issued its directive, neither Montgomery nor White sought time during the pretrial conference to discuss Judge Dearie's decision to use the three-courtroom system with Defendant. (*See generally* DX-H.) However, they discussed Judge Dearie's decision with Defendant after the pretrial conference.[8] (*See* Sept. 8 Hr'g Tr. 13:25-14:2 (Montgomery testifying that they "discussed the issue and what that meant with the client, as any good lawyer should do, and we presented our positions and reasons why.").) White testified that they "explained what [use of

---

[8] Defendant testified that: (1) neither Montgomery nor White explained to him that he had a constitutional right to a public trial; and (2) they never discussed with him Judge Dearie's decision to use the three-courtroom system on the day of the pre-trial conference or at any point before the beginning of trial. (Sept. 8 Hr'g Tr. 59:14-24; *see also* Johnson Decl., DX-A ¶¶ 5-6.) The court does not find Defendant's testimony credible. *First*, Defendant's testimony flies in the face of his experienced trial counsel's representations at the September 8, 2025 evidentiary hearing that they spoke to Defendant about Judge Dearie's decision after the pretrial conference. *Second*, it strains credulity to believe that after Judge Dearie announced that Defendant's family and friends would be physically excluded from the courtroom during Defendant's trial, that neither of his attorneys discussed this with him at any point before the trial. That neither Montgomery nor White had prior experience briefing Sixth Amendment courtroom closure issues, (*see* Def.'s Proposed Findings of Fact ¶ 18; Sept. 8 Hr'g Tr. 14:16-19 (Montgomery), 93:19-21 (White)), does not make Defendant's account any more credible, especially considering Defendant's two prior murder convictions for which he remains incarcerated, (*see id.* 61:16-17) *see United States v. Estrada*, 430 F.3d 606, 617 (2d Cir. 2005) (noting that Federal Rule of Evidence 609(a)(1) "presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully"); *Young v. Calhoun*, No. 85-CV-7584 (SWK), 1995 WL 169020, at *4 (S.D.N.Y. Apr. 10, 1995) (reasoning that "murder conviction is probative of [plaintiff's] credibility since it removes any misperceptions that plaintiff is a model citizen").

the three-courtroom system] meant . . . I think the framework of the conversation was more the jury is going to be in the audience, and so if the jury is in the audience we can't have the jury mixed in with members of the public, family members. And so there would be a separate courtroom for the public viewing." (*Id.* 74:22-75:2.) Although White could not recall approximately when this conversation with Defendant occurred, he testified that this discussion "would have been whatever day Judge Dearie announced that that had been his decision." (*Id.* 75:3-10.) Montgomery and White both testified that when they discussed Judge Dearie's decision with Defendant, it appeared to them that Defendant understood the issue and that Defendant never told them that he wanted to object to Judge Dearie's decision. (*Id.* 28:1-6 (Montgomery), 75:11-15 (White).)

### C. Trial

Then-Magistrate Judge Ramon E. Reyes selected the jury on May 11, May 12, and May 17, 2022. (Min. Entries Dated May 11, 2022, May 12, 2022, May 17, 2022.) Judge Dearie then presided over the trial before the jury from May 18, 2022 to May 24, 2022. (*See* Min. Entries Dated May 18, 2022, May 19, 2022, May 20, 2022 (closing arguments concluded), May 23, 2022 (jury charged), May 24, 2022 (verdict reached and sentencing scheduled for September 30, 2022).)

Both Montgomery and White testified that they recalled speaking with Defendant's family and friends during the trial about the "merits of the case, the merits of the testimony, who said what, how they appeared when they said what they said." (*See* Sept. 8 Hr'g Tr. 28:21-23, 15:5-9 (Montgomery testifying that the conversations involved "commenting on the testimony, particularly the main cooperator in the case"), 75:17-76:5 (White testifying that he recalled that Defendant's friends and family were "particularly impressed" with Montgomery's cross-examination of a

9

Government witness, and that they discussed a cooperating witness and Montgomery's summation with White).) Because Defendant's family and friends commented on the substance of witness testimony during trial, Montgomery was under the impression that they were able to follow along with the trial from the viewing room "because [he did not] know how they would comment unless they heard it." (*Id.* 29:16-17.) Montgomery and White testified that they could not recall anyone from Defendant's family complaining that they were unable to follow along with the trial from the viewing room.[9] (*See id.* 14:24-15:10, 29:21-30:9, 76:18-77:13.)

However, Defendant's friend did complain to Montgomery and White about the three-courtroom system, but only after Defendant rested his case on May 20, 2022. (*See* Min. Entry Dated May 20, 2022; Sept. 8 Hr'g Tr. 52:16-25.) On May 23, 2022, the court charged the jury, which then began deliberations. (*See* Min. Entry Dated May 23, 2022.) Also on May 23, 2022, after the parties completed summations, Robert Holmes gave White a declaration

---

[9] Defendant's sister LaTreace Martin testified at the September 8, 2025 evidentiary hearing that she "could barely see or hear things that were going on during the trial," and that she told Defendant's trial counsel about those difficulties during trial. (Sept. 8 Hr'g Tr. 56:6-57:22; *see also* Martin Decl., DX-I ¶ 4.) With regard to Martin's inability to hear or see the trial, the court does not find that testimony credible because it runs contrary to Judge Dearie's findings after the post-trial evidentiary hearing held on June 2, 2022. (*See generally* Order Denying Mot. for New Trial (Dkt. 296).) Judge Dearie concluded that although "spectators in the overflow room during Mr. Johnson's trial were intermittently unable to hear some trial participants," these "brief" disruptions were "no different than what a courtroom spectator can expect to experience during in-person proceedings." (*Id.* at 2-3, 5.) The court also does not find credible Martin's testimony that she complained of her inability to follow along with the trial to Defendant's trial counsel because it is contradicted by Montgomery and White's testimony, and Martin is biased in favor of Defendant. (*See* Martin Decl. ¶ 5 (describing her "collective interest" with Defendant).)

explaining that he was a "close, long-time friend of the defendant" who watched the trial from the viewing room on May 18 and May 19, 2022, and was "unable to hear the proceedings at times, and was unable to see a key witness for the prosecution who testified on May 19, 2022."[10] (*See* Holmes Decl. 1, DX-F ¶¶ 2, 10; Text Messages Between Holmes, White, and Montgomery, DX-G at 2 (Holmes writing that he gave Johnson the declaration at DX-F "on May 23, 2022"); Sept. 8 Hr'g Tr. 52:16-25 (Holmes confirming, based on DX-G, that he gave Defendant's trial counsel his affidavit on May 23, 2022), 78:17-79:9 (White testifying that he was given the affidavit after closing arguments had been completed).) White "immediately" gave the affidavit to Defendant.[11] (*Id.* 79:4-9.) But White decided not to immediately raise the issue with the court because, based on his conversations with members of Defendant's family "about what they were observing in the courtroom" during the trial, (*id.* 80:6-10), Holmes's alleged difficulties with viewing the trial were "inconsistent with

---

[10] Holmes also testified that he called Montgomery during Defendant's trial but before May 23, 2022 complaining of his inability to follow along with the trial from the viewing room. (*See* Sept. 8 Hr'g Tr. 53:1-11 (Holmes), 20:11-21:4 (Montgomery testifying that someone called him "during the beginning of the trial and suggesting trial strategy and legalities," but "[t]hat person didn't like the fact that I was not receptive to just talking about [his] client's situation to someone who [he] had never met" because of attorney-client privilege).) Montgomery testified that he did not recall discussing the courtroom closure during this phone call. (*See id.* 20:24-25.)

[11] Defendant testified that White did not give him Holmes's affidavit before the end of the trial. (Sept. 8 Hr'g Tr. 60:8-17.) The court does not find Defendant's testimony credible for the same reasons discussed *supra* at Part II.B n.7. The court also takes notice that Defendant admitted during the September 8, 2025 evidentiary hearing that, in connection with his habeas petitions to vacate his state murder convictions, Justice Yvonne Lewis found that the witnesses and declarants that came forward with new evidence that would have exonerated Defendant all had connections to Defendant and came forward after his conviction were "not credible" because they appeared to have been improperly colluding with Defendant. (*See id.* 65:6-67:9.)

11

what [White] observed," (*id.* 79:15-19). White considered that "there had been a significant amount of audio recordings of [Defendant] that were not flattering" with regard to the merits of Defendant's defense. (*Id.* 80:14-16.) White was therefore concerned that Defendant was "losing out on mitigation," and in light of White's duty of candor to the court, White did not want to raise unconfirmed issues with the viewing room to Judge Dearie that could have "severely diminish[ed]" White's credibility with regard to mitigation. (*See id.* 80:14-81:3.)

Montgomery and White testified that although they did account for the jury being spread out throughout the courtroom in how they positioned themselves during Defendant's trial, they did not believe that the court's use of the three-courtroom system affected the verdict in any way. (*Id.* 36:15-21, 83:16-21, 84:18-21.) White testified that the "sheer weight of the evidence" is what led to Defendant's conviction. (*See id.* 84:25-85:10 (White); *see also id.* 38:20-24 (Montgomery).)

### D. Post-Trial Proceedings

On May 23, 2022, Defendant's friend Robert Rose submitted a letter to Chief Judge Brodie objecting to the court's use of the three-courtroom system for Defendant's trial. (*See* Robert Rose Ltr. to Chief Judge Brodie Dated May 23, 2022 (Dkt. 277).)[12] Upon the Government's request, Judge Dearie scheduled a status conference on May 31, 2022, where Defendant made an oral motion for a new trial. (*See* Gov't Ltr. Dated May 25, 2022 (Dkt. 268); May 26, 2022 Not. of Hr'g; Min. Entry Dated May 31, 2022 (scheduling evidentiary hearing for June 2, 2022).) In the meantime, Holmes continued to send text messages to Montgomery and White complaining about the viewing room. (*See* Text Messages Between Holmes, White, and Montgomery at 6-17.)

---

[12] The letter was filed with this court on May 24, 2022. (Robert Rose Ltr. to Chief Judge Brodie Dated May 23, 2022.)

Montgomery and White viewed this as a distraction, hampering their ability to focus on their arguments for a motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 and sentencing mitigation pursuant to 18 U.S.C. § 3553. (*See id.* at 9, 11; Sept. 8 Hr'g Tr. 33:22-34:22, 80:11-81:17.) Following the evidentiary hearing held on June 2, 2022, Judge Dearie denied Defendant's motion for a new trial:

> This was not a closed proceeding; the public had full access to the overflow room and could observe the proceedings in full but for brief audio or visual disruptions. The Court and parties knew the public would be viewing the trial from the overflow room. As such, the trial was subject to the same public presence and scrutiny that would imbue a proceeding with members of the public seated in the gallery.

(*See* Order Denying Mot. for New Trial at 3-4 (citing *United States v. Barrow*, 20-CR-127, 2021 WL 3602859, at *11 (D.D.C. Aug. 13, 2021).)

SO ORDERED.

Dated:   Brooklyn, New York
         October 2, 2025

s/Nicholas G. Garaufis<br>
NICHOLAS G. GARAUFIS<br>
United States District Judge

13